IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:22-CR-00019-NKM-JHC |
| | ) | |
| | ) | |
| MANFREDO M. MADRIGAL, III, | ) | |
| | ) | |
| Defendant. | ) | |

## APPENDIX OF EXHIBITS IN SUPPORT OF AFFIRMING THE MAGISTRATE'S MARCH 2, 2023, $20,000 BOND AND CONDITIONAL RELEASER ORDER

Defendant, Manfredo Martin-Michael Madrigal, III ("Madrigal" or "Defendant"), by and through the undersigned counsel ROYER CARAMANIS PLC and MAHER LEGAL SERVICES PC, respectfully submits these Exhibits cited and in support of Madrigal's MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO RECONSIDER ORDER IMPOSING PRETRIAL DETENTION filed contemporaneously this 17th day of March 2023. 18 U.S.C. § 3142.

* * * * *

**DESCRIPTION OF EXHIBIT**                                                                                      **EXHIBIT NO.**

Video/Audio Recording from January 2021 Detailing
    Victim 2's Threat to Ruin Madrigal's Life (thumbdrive provided)……..……..……1

Sworn declaration from Joseph Bruno Detailing Instances Where Madrigal
    Saved Bruno's Life in Close Quarters Combat with the Enemy …………….…...2

Victim 2's Sworn Recantation and Clarification of No Violence
    "*It was never my intention for Manfredo to be arrested and charged
    with a crime he did not commit*"…………………………………………………3

Judge Advocate General's Corps G-2 ("Intelligence") Out-Processing Form
    Showing No 18 U.S.C. § 1001 Advisement/Warning ………………………….4

Updated "Adjustment Letter" from Albemarle Charlottesville Regional Jail
    Noting No Incidents over Eight Months of Pretrial Detention and
    Substantial Educational and Self-Improvement Courses……………………….5

Madrigal's 4.0 GPA Masters Degree Transcript ……………………………………………6

Madrigal's 3.06 GPA Juris Doctor Transcript ………………………………………………7

Select Portions of Release Hearing Transcript Dated March 2, 2023,
    As Cited in Madrigal's Memorandum (and in order of citation)……………………8

Representative Examples of Uncorrected Gov't Overstatements, Omissions,
    and Unreliable Inferences ……………………………………………………………9

Declaration of David Madrigal, Esquire – Madrigal's Brother ……………………………..10

Declaration of Mr. & Mrs. Manfredo Madrigal, Jr. ………………………………………11

Color Digital Image of Madrigal Family Residence in St. Charles, Illinois ………………..12

Respectfully submitted,

**/s/Jessica F. Phillips**
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, Virginia 22902
Tel: (434) 260-8767
Fax: (434) 710-4061
E-mail: jphillips@rc.law

**/s/ John N. Maher**
John N. Maher (IL Bar #6237599)
Kevin J. Mikolashek
MAHER LEGAL SERVICES, PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 781-9212
Fax: (708) 781-9693
john@maherlegalservices.com
kevin@maherlegalservices.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certified that on this 17th day of March 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>**/s/Jessica F. Phillips**</u>
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, Virginia 22902
Tel: (434) 260-8767
Fax: (434) 710-4061
E-mail: jphillips@rc.law

IN THE UNITED STATES DISTRICT COURTFOR THE
WESTERN DISTRICT OF VIRGINIA
**Charlottesville Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:22-CR-00019-NKM-JHC |
| | ) | |
| | ) | |
| MANFREDO M. MADRIGAL, III, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF JOSEPH BRUNO

1.     My name is Joseph Bruno. I am a citizen of the United States over the age of 18 years, reside in NY, and am a Mason helper for NYCHA.

2.     I was Honorably discharged from the US Army after serving for close to eight years in predominantly special operations.  I had multiple combat roles mostly as a team leader for Infantry assignments.

3.     Madrigal and I met in 2010 when he first came to 1st Battalion 75th Ranger Regiment in Savannah GA.   He learned and performed outstanding in comparison to his peers during our training cycle.  Battalion isn't an easy environment to perform well in.

4.     Madrigal was on my team and on one night our assault force received gun fire in the enemy objective we were room clearing through in Afghanistan. Leading my team (Madrigal directly behind me) through a danger area I slipped and had a weapon malfunction. Madrigal moved right in front of me without hesitation eliminated terrorists trying to kill us. If Madrigal didn't do what he did that night I most likely wouldn't be with us today.  Madrigal was an amazing Ranger and I owe him more than most people that never been to War comprehend.

5.     Madrigal is not a flight risk or danger to anybody.  I've been diligently praying that all of this gets behind him, and he moves on to better places as he should be in this life. He is one of the best Rangers I've served with and has more honor and integrity than anyone I know.   He comes from a great family and has accomplished so much in a short time in comparison to so many other people I know.

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct.

EXHIBIT
2

Executed on this 15TH day of March, 2023, in the Commonwealth of Virginia, United States of America.

Signed:

Respectfully submitted,

**/s/Jessica F. Phillips**
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, Virginia 22902
Tel: (434) 260-8767
Fax: (434) 710-4061
E-mail: jphillips@rc.law

**/s/ John N. Maher**
John N. Maher (IL Bar #6237599)
Kevin J. Mikolashek
MAHER LEGAL SERVICES, PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 781-9212
Fax: (708) 781-9693
john@maherlegalservices.com
kevin@maherlegalservices.com

## CERTIFICATE OF SERVICE

I hereby certified that on this ___ day of March 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Jessica F. Phillips
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, Virginia 22902
Tel: (434) 260-8767
Fax: (434) 710-4061
E-mail: jphillips@rc.law

## <u>AFFIDAVIT OF NON-PROSECUTION</u>

My name is ████████████ I affirm that I am competent to make this statement and that I do so without any duress. The statements contained herein are true and accurate.

I am listed as a victim #1 in Case #20115959 against Manfredo Madrigal, whom I am aware has been charged with assault on a family or household member in the third degree.

I want to advise the Court and the prosecuting attorney, that I do not wish to pursue charges in this matter. I would like for the prosecution of this case to be withdrawn, dismissed, and terminated. I do not want to testify in this case, although I understand I may be compelled to do so.

On the evening of January 29, 2020, my intentions and hopes were that police officers would simply help deescalate a verbal argument. I never had the apprehension of imminent physical injury to myself or a family member. I believe Deputy Barber's report grossly mischaracterizes the events of that evening for several reasons.

Deputy Barber incorrectly stated in his report that Manfredo "hit" my hands away. This is simply not a true statement nor what I told Deputy Barber. I told Deputy Barber that I had placed my hands on Manfredo to try to encourage him to go to bed and he simply brushed them off without any malicious intent. I would like to reiterate that Manfredo never purposefully or indirectly created the apprehension of physical imminent injury to myself or a family member.

Deputy Barber included in his report that I stated Manfredo pushed Mr. Eddings. However, he neglected to accurately record the entire narrative. Manfredo did not initiate any physical altercation with Mr. Eddings. At this point of time, Mr. Eddings was attempting to usher Manfredo to bed, which led to Manfredo pushing him off him.

1 of 2



Additionally, I would like to bring it to the Court's attention that I expressly told Deputy Barber that I simply wanted some separation from Manfredo at the time so cooler heads could prevail. Deputy Barber then told me that the only option would be to arrest Manfredo because he could not simply ask him to leave. I even asked Deputy Barber if it were possible for them or a taxi to take Manfredo to a hotel for the evening. He told me the only possible courses of action was an arrest, an official letter of eviction, or me leaving the house. It was never my intention for Manfredo to be arrested and charged with a crime that he did not commit.

I AM SIGNING THIS AFTDIAVIT VOLUNATIRLY. I HAVE NOT BEEN COERCED OR THREATENED IN ANY WAY TO SIGN THIS AFTIDAVT.

ATTESTED: ▮

17 February 2020

## Acknowledgement - Arkansas Individual Acknowledgement

State of Arkansas

County of Boone

On this the 17th day of February , 20 20 before me Jacob Shiarla ▪ , a Notary Public, appeared the within named ██████████ known to me or satisfactorily proven to be such person whose name(s) is/are stated and acknowledged that he/she/they have so signed, executed, and delivered said instrument for the uses and purposes therein mentioned and set forth.

In testimony whereof, I have hereunto set my hand and official seal on this 17th day of February , 20 20 .

JACOB SHIARLA
Notary Public – Arkansas
Boone County
Commission # 12701395
My Commission Expires Jul 17, 2027

Notary Signature

My Commission Expires: 07/17/2027

**Description of Attached Document**

Title or Type of Document: Affadavit of Non-prosecution

Document Date: 02/17/2020        Number of Pages: 2

CUI
*(When filled in)*



# The Judge Advocate General's Legal Center and School
## G2 SECURITY OUT-PROCESSING REQUEST

Personnel with TJAGLCS accounts (NIPR, SIPR,) and/or a facility access badge issued by TJAGLCS are required to out-process with the TJAGLCS G2 Security Office **IN PERSON** on their last date. When an employee is unable, or fails, to out-process; the supervisor will take the necessary steps to ensure the return of the employee's badge and will have this form executed for the employee. Virtual out-processing is not authorized unless an exception to policy is approved in advance.

Sections 2-6 are required for all TJAGLCS CIV, MIL, and CTR personnel **REGARDLESS** of clearance, access, or program affiliation.

**SECTION 1:**
*Completed by the employee or the employee's Supervisor or COR.*

Employee's Name *(Last, first MI):* Madrigal, Manfredo, M

Employee Type *(Select one):*

☐ CIV/Grade: _____    ☒ MIL/Rank: 1LT    ☐ CTR/Company: _____

Supervisor or COR: LTC Rankin

Date of Out-processing *(Last day in the facility):* 24 Feb 2022

Reason for Departure *(Select one):* ☐ Retirement  ☐ PCS  ☐ Termination  ☒ Other: ETS

**SECTION 2:**

### TJAGLCS Badging

The below signature verifies that the employee identified in Section 1 of this document has relinquished any current or expired access badge (s) previously issued to them by the Security Office.

SSO Signature: *[signature]*    Date: 22 Feb 22

**SECTION 3:**

### Annual Training Requirements
*Have you completed the following in the last 12 months?*

SCI Security Refresher Training  ☐ Yes  ☐ No  ☒ N/A

Anti Terrorism Level 1 Training  ☒ Yes  ☐ No  ☐ N/A

Derivative Classification Markings Training  ☐ Yes  ☐ No  ☒ N/A

Threat Awareness and Reporting Training  ☒ Yes  ☐ No  ☐ N/A

SERE Training  ☐ Yes  ☐ No  ☐ N/A

ISOPREP  ☒ Yes  ☐ No  ☐ N/A

Employee Signature: *[signature]*    Date: 22 Feb 2022

CUI
*(When filled in)*



EXHIBIT
4

USAO_000006

CUI
*(When filled in)*

**SECTION 4:**

### Foreign Travel Debriefing

**Have you traveled outside of the US while assigned to TJAGLCS?**      ☐ YES  ☐ NO

**If YES specify Location and Dates Below**

Location  *N/A*                                          Date: _____

Location  *N/A*                                          Date: _____

Location  *N/A*                                          Date: _____

**SECTION 5:**

### Foreign Contact Debriefing

**Have you had any contact with a foreign national while assigned to TJAGLCS?**  ☐ YES   ☒ NO

**If YES please complete below**

Full Name  *N/A*                              Date Begin Contact_____ Date End Contact_____

Full Name  *N/A*                              Date Begin Contact_____ Date End Contact_____

**SECTION 6:**

### TJAGLCS Security Debriefing

I acknowledge that it is a crime to knowingly make any materially false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the Executive Branch of the United States, per 18 U.S.C. 1001.

Employee Signature: *M.M.*                              Date: *22 Feb 22*

SSO Signature: _____              Date: *22 Feb 22*

Witness Signature: *D.O. McDill Jr.*                  Date: *22 Feb 22*

G2 *use only:* ☐ SF-312 ☐ 4414 ☐ NATO ☐ Security File ☐ DISS ☐ CUBE ☐ ACCS

CUI
*(When filled in)*

USAO_000007

**Jessica Phillips**

| | |
|---|---|
| **From:** | Irv Ellman <irv@dominioninvestigativegroup.com> |
| **Sent:** | Monday, March 13, 2023 8:35 AM |
| **To:** | John Maher; Kevin Mikolashek; Jessica Phillips |
| **Subject:** | Ms. HENSLEY, Adjustment letter |

John, I spoke with Ms. HENSLEY at the Albemarle County jail this AM in reference to the adjustment letter for the client. Ms. HENSLEY advised that there have been no changes relating to the clients behavior/adjustment since the previous letter on 02 24 2023.
Irv


--
Irv Ellman
Dominion Investigative Group LLC
Virginia Private Investigator License #11-8997

This e-mail may contain confidential and/or privileged information. If you are not the intended recipient please destroy the message and all attachments.



1



### ALBEMARLE-CHARLOTTESVILLE REGIONAL JAIL
160 Peregory Lane
Charlottesville, VA 22902

Phone (434) 977-6981  Fax: (434) 977-5312
www.acrj.org

Colonel Martin Kumer
Superintendent

February 24, 2023

Re: Jail Adjustment for Manfredo Martin Madrigal III, DOB

To Whom It May Concern:

Mr. Madrigal began his incarceration at the Albemarle Charlottesville Regional Jail on November 7, 2022. Upon his intake, Mr. Madrigal was placed in mandatory quarantine, completing on October 19, 2022. On the same day, an Intake Recidivism Risk Screener was completed on Mr. Madrigal with the end result being a low recidivism rate and no classes were recommended.

Mr. Madrigal completed 46 Edovo Courses for a total of 56.84 hours in education for a total of 301 lessons completed (separate pages of all of the courses completed).

Mr. Madrigal has not received any institutional charges.

Please feel free to contact me at 434.977.6981 ext. 327 if you have any further questions.

Respectfully,

Lisa Hensley, M.S.
Case Manager
Albemarle-Charlottesville Regional Jail
160 Peregory Lane
Charlottesville, VA 22902
(434) 977-6981 Ext. 327
hensleyl@acrj.org



EXHIBIT
5



**Graduate Academic Summary – Unofficial**

Name:   Manfredo Madrigal
Student ID:   2803911

Institution Info:        University of Kansas
                         Lawrence, KS 66045
Print Date:              08/05/2019

**Beginning of Graduate Record**

**2018 Fall**

Program:        Law Graduate

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| JOUR | 840 | Seminar In: | 3.000 | 3.000 | A | 12.000 |
| Course Topic: | | Crisis Communications | | | | |
| LAW | 816 | Domstc Aspects Homeland Secrty | 3.000 | 3.000 | A | 12.000 |
| LAW | 817 | Homeland Security Practicum | 1.000 | 1.000 | A | 4.000 |
| PRVM | 806 | Special Topics: | 3.000 | 3.000 | A | 12.000 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | 4.000 | Term Totals | 10.000 | 10.000 | 10.000 | 40.000 |
| Cum GPA | 4.000 | Cum Totals | 10.000 | 10.000 | 10.000 | 40.000 |

**2019 Spring**

Program:        Law Graduate

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| LAW | 815 | Int Aspects of Homeland Secrty | 3.000 | 3.000 | A | 12.000 |
| LAW | 817 | Homeland Security Practicum | 2.000 | 2.000 | A | 8.000 |
| LAW | 818 | Constitl Limits Intel Gathring | 3.000 | 3.000 | A | 12.000 |
| PUAD | 850 | Intergovernmental Relations | 3.000 | 3.000 | A | 12.000 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | 4.000 | Term Totals | 11.000 | 11.000 | 11.000 | 44.000 |
| Cum GPA | 4.000 | Cum Totals | 21.000 | 21.000 | 21.000 | 84.000 |

**2019 Summer**

Program:        Law Graduate

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| LAW | 817 | Homeland Security Practicum | 3.000 | 3.000 | A | 12.000 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | 4.000 | Term Totals | 3.000 | 3.000 | 3.000 | 12.000 |



EXHIBIT
6

USAO_000137

| | | | | | | |
|---|---|---|---|---|---|---|
| Cum GPA | 4.000 | Cum Totals | | 24.000 | 24.000 | 24.000 | 96.000 |

**Graduate Career Totals**

| | | | | | | |
|---|---|---|---|---|---|---|
| Cum GPA: | 4.000 | Cum Totals | | 24.000 | 24.000 | 24.000 | 96.000 |

**Non-Course Milestones**

Master's Degree General Exam
Status: Completed
Program: Law Graduate
Date Completed: 06/17/2019
Milestone Level: Satisfactory
Date Attempted: 06/17/2019 Completed


Master's Thesis
Status: Completed
Program: Law Graduate
Date Completed: 08/01/2019
Milestone Title: Practicum Experience
Date Attempted: 08/01/2019 Completed


End of Graduate Academic Summary - Unofficial



Page 1 of 3

**Law Academic Summary - Unofficial**

Name:   Manfredo Madrigal
Student ID:   2893911

Institution Info:          University of Kansas
                          Lawrence, KS 66045
Print Date:               08/05/2019

Beginning of Law Record

2016Summer

Program:          Law Professional

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| LAW | 826 | Property | 2.000 | 2.000 | B | 6.000 |
| LAW | 826 | Property | 2.000 | 2.000 | B- | 5.400 |
| LAW | 831 | Torts I | 2.000 | 2.000 | C+ | 4.600 |
| LAW | 831 | Torts I | 2.000 | 2.000 | B- | 5.400 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | 2.680 | Term Totals | 8.000 | 8.000 | 8.000 | 21.400 |
| Cum GPA | 2.680 | Cum Totals | 8.000 | 8.000 | 8.000 | 21.400 |

2016Fall

Program:          Law Professional

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| LAW | 804 | Civil Procedure | 4.000 | 4.000 | B- | 10.800 |
| LAW | 809 | Contracts | 4.000 | 4.000 | B+ | 13.200 |
| LAW | 820 | Lawyering Skills I | 2.000 | 2.000 | B | 6.000 |
| LAW | 865 | Business Associations I | 3.000 | 3.000 | C+ | 6.900 |
| LAW | 972 | Professional Responsibility | 2.000 | 2.000 | B | 6.000 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | 2.860 | Term Totals | 15.000 | 15.000 | 15.000 | 42.900 |
| Cum GPA | 2.800 | Cum Totals | 23.000 | 23.000 | 23.000 | 64.300 |

2017Spring

Program:          Law Professional

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| LAW | 806 | Introducln Constitutional Law | 4.000 | 4.000 | B- | 10.800 |
| LAW | 814 | Criminal Law | 4.000 | 4.000 | B+ | 13.200 |
| LAW | 821 | Lawyering Skills II | 3.000 | 3.000 | C+ | 6.900 |
| LAW | 866 | Business Associations II | 3.000 | 3.000 | B | 9.000 |



USAO_000139

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | | 2.850  Term Totals | 14.000 | 14.000 | 14.000 | 39.900 |
| Cum GPA | | 2.820  Cum Totals | 37.000 | 37.000 | 37.000 | 104.200 |

### 2017Summer

Program:                    Law Professional

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| LAW | 933 | Judicial Field Placement:Prog | 3.000 | 3.000 | CR | 0.000 |
| LAW | 933 | Judicial Field Placement:Prog | 3.000 | 3.000 | CR | 0.000 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | | 0.000  Term Totals | 6.000 | 6.000 | 0.000 | 0.000 |
| Cum GPA | | 2.820  Cum Totals | 43.000 | 43.000 | 37.000 | 104.200 |

### 2017Fall

Program:                    Law Professional

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| LAW | 860 | Alternative Dispute Resolution | 3.000 | 3.000 | B+ | 9.900 |
| LAW | 886 | Civil Rights Actions | 3.000 | 3.000 | B | 9.000 |
| LAW | 908 | Evidence | 3.000 | 3.000 | C+ | 6.900 |
| LAW | 944 | International Trade Law | 3.000 | 3.000 | A- | 11.100 |
| LAW | 945 | Internatnl Commerce&Investment | 3.000 | 3.000 | B | 9.000 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | | 3.060  Term Totals | 15.000 | 15.000 | 15.000 | 45.900 |
| Cum GPA | | 2.890  Cum Totals | 58.000 | 58.000 | 52.000 | 150.100 |

### 2018Spring

Program:                    Law Professional

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| LAW | 843 | Law of War:Hist,Princpl&Practc | 2.000 | 2.000 | A | 8.000 |
| LAW | 864 | Advncd International Trade Law | 3.000 | 3.000 | B | 9.000 |
| LAW | 878 | Criminal Procedure | 3.000 | 3.000 | B+ | 9.900 |
| LAW | 928 | Remedies | 3.000 | 3.000 | B | 9.000 |
| LAW | 992 | Trial Advocacy | 3.000 | 3.000 | A | 12.000 |
| LAW | 994 | Special Topics: | 1.000 | 1.000 | A | 4.000 |
| Course Topic: | | Landmark Supreme Court Cases | | | | |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | | 3.460  Term Totals | 15.000 | 15.000 | 15.000 | 51.900 |
| Cum GPA | | 3.010  Cum Totals | 73.000 | 73.000 | 67.000 | 202.000 |

### 2018Fall

Program:                    Law Professional

| Course | | Description | Attempted | Earned | Grade | Points |
|---|---|---|---|---|---|---|
| LAW | 827 | International Law and Litertre | 3.000 | 3.000 | A- | 11.100 |
| LAW | 873 | Commercl Law:Secured Transacln | 3.000 | 3.000 | B+ | 9.900 |
| LAW | 935 | Juvenile Law | 2.000 | 2.000 | A- | 7.400 |

| | | | Attempted | Earned | GPA Units | Points |
|---|---|---|---|---|---|---|
| Term GPA | | 3.550  Term Totals | 8.000 | 8.000 | 8.000 | 28.400 |
| Cum GPA | | 3.070  Cum Totals | 81.000 | 81.000 | 75.000 | 230.400 |

USA v. Madrigal, 3:22cr19, 3/2/2023

1                    UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF VIRGINIA
2                    CHARLOTTESVILLE DIVISION

3   ****************************************************************

4   UNITED STATES OF AMERICA,      CRIMINAL CASE NO.:  3:22CR19
                                   MARCH 2, 2023, 10:21 A.M.
5          Plaintiff,             BOND HEARING

6   vs.

7   MANFREDO MADRIGAL, III,        Before:
                                   HONORABLE JOEL C. HOPPE
                                   UNITED STATES MAGISTRATE JUDGE
8          Defendant.             WESTERN DISTRICT OF VIRGINIA

9   ****************************************************************

10  APPEARANCES:

11

12  For the Government:           JESSICA LEIGH JOYCE, ESQUIRE
                                   United States Attorney's Office
                                   255 West Main Street
13                                 Charlottesville, VA  22902
                                   434-284-9555

14

15  For the Defendant:            JOHN N. MAHER, ESQUIRE
                                   Maher Legal Services, P.C.
16                                 17101 71st Avenue
                                   Tinley Park, IL 60477
17                                 708-468-8155

18

19

20  FTR Operator:  Karen Dotson

21

22  Court Reporter:   Lisa M. Blair, RPR, RMR, CRR, FOCR
                                   255 West Main Street, Suite 304
23                                 Charlottesville, Virginia  22902
                                   434.296.9284

24

25         PROCEEDINGS RECORDED BY ELECTRONIC RECORDING;
    TRANSCRIPT PRODUCED BY COMPUTER.

EXHIBIT
8

USA v. Madrigal, 3:22cr19, 3/2/2023

```
1   APPEARANCES CONTINUED:

2   For the Defendant:           JESSICA FAY PHILLIPS, ESQUIRE
                                 Royer Caramanis PLC
3                                200-C Garrett Street
                                 Charlottesville, VA 22902
4                                434-260-8767

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

USA v. Madrigal, 3:22cr19, 3/2/2023

1   already failed to respect the criminality of some of his

2   conduct.  He has used his proposed third-party custodians to

3   further that conduct.  And a situation in which he might be at

4   some other facility, the Court is well aware of kind of the

5   limitations of pretrial release supervision and the extensive

6   monitoring that would have to be in place to prevent the

7   threatening conduct in this cyberstalking case and this

8   tampering case that is just simply not sufficient to adequately

9   address the risks here, which are already happening even though

10  the defendant has no access to devices while he is detained.

11          THE COURT:  Well, Ms. Joyce, you know, of course I

12  haven't set any conditions.  I haven't addressed family members

13  at any past hearings about direct or indirect contact with

14  victims or witnesses.  You know, I tend to put some stock in

15  the Court's admonitions to parties and also to other people who

16  may be involved in executing the Court's orders.

17          And then as to -- as to the contacts with victims or

18  the concerns about defendant's use of computers or devices, if

19  there were a condition that probation had access to any

20  computers or devices the defendant used and could, you know,

21  review those, as long as there isn't any review of any

22  attorney-client information, but to see if the defendant is

23  engaging in some sort of conduct that could allow him to

24  contact victims or track victims or something along those

25  lines -- and, of course, if the victims themselves were

USA v. Madrigal, 3:22cr19, 3/2/2023

1  abide by the Court orders, and that there is no clear and

2  convincing evidence that he is going to be a danger to anyone,

3  especially when this young man's liberty is at stake.  He has

4  been incarcerated for seven months.  He's got a fine record in

5  seven months.  Apparently he's popular with the rest of the

6  pretrial and post-trial detainees.  And on top of that, he's

7  got a constructive attitude as an officer of the court and

8  member of the Missouri bar that he's not going to disobey your

9  orders either and subject himself to potential discipline

10 there.

11      Thank you, Your Honor.  That concludes my remarks.

12      THE COURT:  All right.  We are of course here on the

13 defendant's motion asserting that there is new information

14 that's material to the detention decision.  As I said earlier,

15 I do think that there is some new information, new

16 considerations for the Court regarding the defendant's mental

17 health situation and the potential treatment.

18      I will tell you that I feel like there is a big piece

19 of that evidence that's missing right now, though.  And that is

20 while we have a diagnosis and disability rating, I really don't

21 have much evidence beyond that as to any -- any effect of the

22 defendant's mental health impairments and alcohol abuse and

23 exactly what I can do to address those, because I do think that

24 the evidence that's been presented shows that there is -- there

25 is a real difference between Mr. Madrigal when he is stable and

USA v. Madrigal, 3:22cr19, 3/2/2023

1   when he is unstable.  That is -- I think that is my primary

2   concern.  It's a primary concern for Mr. Madrigal's potential

3   danger to the community and potential flight risk.

4          MR. MAHER:  Judge, can I speak to that?

5          Before you -- if I may, he was classified as

6   nonviolent at the jail.  He was classified as low recidivism at

7   the jail.  He hasn't had a drink in seven or eight months right

8   now.  He has abided by the law.  So that is evidence that

9   without the alcohol, he is abiding by the law.  He's obeying

10  instructions.  He's nonviolent.  He's not making threats to

11  anybody.  So I would ask the Court to consider that in its

12  evaluation on those specific points.  And although I think the

13  statute says the Court may fashion an order to restrict

14  excessive alcohol, we would abide by the fact that he is going

15  cold turkey.  He's already cold turkey.  And if he checks into

16  the residential treatment program to receive the benefit of

17  that, is getting the Trazodone for recuperative sleep -- which

18  he is not getting now -- that we stand to see a very stable

19  Manny Madrigal, the same kind of stable guy that acquitted

20  himself for 35 years in some of the most dangerous places in

21  the world.  Now that this has confronted him as an officer of

22  the court -- his brother is an officer of the court, his father

23  is an executive, his mother is a loving wife and spouse.  On

24  top of that, his sister and his brother-in-law being all

25  educated people who live nearby each other.  There's numbers of

USA v. Madrigal, 3:22cr19, 3/2/2023

1  Security number, and it's registered to a woman who lives in

2  North Westbury near the embassy, but we don't know who this

3  foreign national was.  So if Manny had no contact with a

4  foreign national, and instead -- as Manny has shared with us --

5  he was trying to Google a Russian restaurant which is right

6  near the embassy because he wanted to get some Russian borscht,

7  a beef soup -- and he had planned to come up to Washington with

8  his dog the next day, jog the Mall, and go have some borscht.

9          And candidly, Judge, I think the blindingly obvious

10  is Manny was drinking a lot, an awful lot.  And when you look

11  at the video of the destruction of the paralegal slide deck,

12  it's not necessarily the inferences that can be drawn by the

13  government's papers and arguments that he is using tradecraft

14  and espionage, and that he's using his TS/SCI to somehow gain

15  an advantage to jeopardize American national security.  It

16  looks -- and this is my view, but also the team's view -- as if

17  he's talking in his sleep.  You don't see Manny's face.  The

18  telephone is taking a picture of his computer.  And his

19  lethargy to press the buttons, it's almost as if he is

20  sleepwalking or in a coma.  So we think that that cuts against

21  any sort of actual real foreign contact or any real intent.

22  Instead, it could probably be characterized in a toxic

23  relationship talking between two lovers who have been doing a

24  lot of drinking and are breaking up.  And that to me doesn't

25  rise to the level of a crime.

USA v. Madrigal, 3:22cr19, 3/2/2023

1  when he is unstable.  That is -- I think that is my primary

2  concern.  It's a primary concern for Mr. Madrigal's potential

3  danger to the community and potential flight risk.

4         MR. MAHER:  Judge, can I speak to that?

5         Before you -- if I may, he was classified as

6  nonviolent at the jail.  He was classified as low recidivism at

7  the jail.  He hasn't had a drink in seven or eight months right

8  now.  He has abided by the law.  So that is evidence that

9  without the alcohol, he is abiding by the law.  He's obeying

10  instructions.  He's nonviolent.  He's not making threats to

11  anybody.  So I would ask the Court to consider that in its

12  evaluation on those specific points.  And although I think the

13  statute says the Court may fashion an order to restrict

14  excessive alcohol, we would abide by the fact that he is going

15  cold turkey.  He's already cold turkey.  And if he checks into

16  the residential treatment program to receive the benefit of

17  that, is getting the Trazodone for recuperative sleep -- which

18  he is not getting now -- that we stand to see a very stable

19  Manny Madrigal, the same kind of stable guy that acquitted

20  himself for 35 years in some of the most dangerous places in

21  the world.  Now that this has confronted him as an officer of

22  the court -- his brother is an officer of the court, his father

23  is an executive, his mother is a loving wife and spouse.  On

24  top of that, his sister and his brother-in-law being all

25  educated people who live nearby each other.  There's numbers of

67

USA v. Madrigal, 3:22cr19, 3/2/2023

1    conditions where they're not going to take him out to social

2    settings where theres going to be drinking.  There's no alcohol

3    in the house.  Pretrial services mentioned that.  And if you

4    give him an order saying don't buy any alcohol, don't have any

5    other persons buy alcohol, I imagine this young man will abide

6    by it.  I would pledge that.  You need look no further than the

7    last seven months.  No problems.

8            Thank you, Judge.

9            THE COURT:  So the primary consideration for me is

10   are there -- is there a condition that can make sure that

11   Mr. Madrigal is stable at the outset, and then is there

12   something that can continue that stability?  And I do think

13   that potentially there are conditions that would allow that.

14   An inpatient facility was mentioned earlier that's in Illinois.

15   I don't have any familiarity with it.  I think the probation

16   office here doesn't either.  So we really would need to have

17   more information about this facility and the probation office's

18   approval of the facility.  I think that approval would probably

19   have to at least be started by the probation office in Illinois

20   that's more familiar with the options there.

21           Following any inpatient treatment, I think that there

22   would have to be an aftercare plan that's approved by the

23   probation office, and it's one that I also think would need to

24   be informed by the recommendation of the treatment providers at

25   the inpatient facility.  And this really gets to my concern

USA v. Madrigal, 3:22cr19, 3/2/2023

1  that there's just kind of a lack of information about the

2  mental health and alcohol problems.  But if there is a -- if

3  there is a treatment provider that can identify, have

4  appropriate aftercare following inpatient, I think that that

5  goes a long way to making sure that Mr. Madrigal is stable, and

6  it really does lessen the risk that I see to the community and

7  his nonappearance.  And then there would be other conditions

8  that would provide additional layers of protection.  But I will

9  say this, that his release to an inpatient facility, it really

10  would have to be essentially a bed to bed where we would need

11  to have an approved facility, a report date in place before he

12  could be released.

13         Now, additionally there would be GPS monitoring, and

14  that provides me with some assurance that -- at least that

15  probation is going to know his whereabouts, and that if

16  something went wrong, that there would be -- there would be

17  plenty of leeway time for any victims out there to know that

18  Mr. Madrigal is not where he is supposed to be.  I think that

19  if he's -- if he's stable and his mental health is being

20  monitored by treatment providers and the probation office has

21  access to that, that we're going to -- we're going to know if

22  there are any problems on the horizon.  So I don't think that

23  there would be -- well, I think the risk that something could

24  go wrong would be significantly lessened.  If Mr. Madrigal is

25  not using any devices that are capable of accessing the

USA v. Madrigal, 3:22cr19, 3/2/2023

1  Internet, then that's another way to address the threats and

2  some of the other concerns that arise from the allegations in

3  this case.

4         The defendant would -- after doing inpatient care,

5  would I think be residing with his family.  I understand that

6  the probation office in Illinois has said that it's an

7  acceptable situation.  I do want to emphasize to Mr. Madrigal

8  and to his family that one of the conditions is going to be

9  that there is no contact, directly or indirectly, with anyone

10  who is a victim or a witness in the case.  Now, it's -- I think

11  both sides have indicated that some family members are

12  witnesses or potential witnesses.  So I'm going to direct that

13  there be no case-related communication between the defendant

14  and any family members, other than talking about logistics for

15  getting him to and from court.

16         And, you know, direct or indirect communication with

17  a victim or a witness, it's of course having -- Mr. Madrigal,

18  if you talk to someone face to face, if you send someone a

19  message directly, that would be a violation.  If somebody

20  conveys a message for you or contacts a victim or witness on

21  your behalf, that's a violation as well.  It can be

22  something -- you know, I've had this come up where a defendant

23  offered to give a witness a ride somewhere, and that was one of

24  the acts that I found was a violation of that no contact order.

25  So it's really -- it's 100 percent no contact, direct or

USA v. Madrigal, 3:22cr19, 3/2/2023

1    indirect.  And it's something that if there is any, I will

2    detain you for the rest of the case.

3              THE DEFENDANT:  I understand, Your Honor.

4              THE COURT:  Of course there would be conditions:  No

5    use of alcohol, no firearms, no firearms in the residence.  I

6    think there are probably a few additional standard conditions

7    that I'll go over.

8              Ms. Dotson, do you have the paperwork?

9              Of course, Mr. Madrigal, as counsel said earlier,

10   would have to surrender his passport to the probation office

11   and not obtain any passport.  You would have to remain in the

12   Northern District of Illinois and not travel outside of that

13   district unless he had the permission of the supervising

14   officer.  You have to submit to testing to determine if you're

15   using any substances and submit to inpatient or outpatient

16   substance abuse therapy, if directed by the pretrial officer.

17   Follow the instructions of the supervising officer and report

18   any contact with law enforcement personnel including arrest,

19   questioning, or traffic stops.

20             All right.  Does the probation office have any

21   additional recommendations?

22             PROBATION OFFICER:  Are you holding him for this bed

23   space?

24             THE COURT:  Yes.

25             PROBATION OFFICER:  I would just like to reach out to

USA v. Madrigal, 3:22cr19, 3/2/2023

1   see if this is a good facility, or we could figure out which

2   one is best.  He will have to have a GPS in the facility, which

3   could be an issue.  So I'd like to reach out to them to see if

4   that will be a problem for them.  Civil facilities don't like

5   that, but I think he should have it on while he is there.

6           Other than that, if he could just surrender his

7   firearm license.

8           THE COURT:  Okay.

9           MR. MAHER:  Your Honor, we're prepared to do that

10  now, if you'd like.

11          THE COURT:  I know the government opposes release,

12  but are there any additional conditions that the government

13  would suggest?

14          MS. JOYCE:  No conditions, Your Honor, but at this

15  time the government would move for a stay of the Court's

16  decision pending appeal and ask that it gets five business days

17  to file.

18          THE COURT:  So there is another step that has to be

19  taken before he would be released, and that's the approval of

20  any facility.  So he's not going to be released today.  I think

21  that should give you enough time to file an appeal, if you want

22  to.

23          MS. JOYCE:  Okay.  Thank you, Your Honor.

24          (Pause.)

25          THE COURT:  All right.  Mr. Madrigal, you will be

USA v. Madrigal, 3:22cr19, 3/2/2023

1   released on an unsecured bond of $20,000 with the following

2   conditions:  You must not violate any federal, state, or local

3   law while on release; that you would cooperate in the

4   collection of a DNA simple if required by federal law; that you

5   must advise the court or pretrial services office in writing

6   before making any change of residence or telephone number; that

7   you would appear for court as required, and if convicted, that

8   you would surrender to serve any sentence that may be imposed;

9   that you would submit to the supervision and report for

10  supervision to the probation office.

11          I want him to meet with the probation office either

12  today or upon release.  I think you would probably need to do

13  that to fix him with a GPS device.

14          PROBATION OFFICER:  Yeah, I'll have him come so I can

15  put the GPS placement on him and then go to the inpatient

16  facility.

17          THE COURT:  All right.  So I'll note that you need to

18  report upon your release from custody.  You would have to

19  surrender your passport to the probation office, and you can do

20  that today.  You may not obtain a passport or other

21  international travel document.  You will have to remain in the

22  Western District of Illinois and not travel outside of -- or

23  sorry, the Northern District of Illinois and not travel outside

24  of the Northern District of Illinois without the permission of

25  the supervising officer.  You'll have to avoid all contact,

USA v. Madrigal, 3:22cr19, 3/2/2023

 1   directly or indirectly, with any person who is or may be a

 2   victim or a witness in the investigation or prosecution,

 3   including Victim 1 and Victim 2.  You'll have to get medical or

 4   psychiatric treatment.  You may not possess a firearm,

 5   destructive device or other weapon.  You may not use alcohol.

 6   You may not use or unlawfully possess a narcotic drug or other

 7   controlled substance, unless prescribed by a licensed medical

 8   practitioner.  You will have to submit to testing to determine

 9   if you're using any substances.  You will have to participate

10   in a program of inpatient or outpatient substance abuse therapy

11   and counseling if directed by the pretrial services office.

12   You will be on location monitoring through GPS.  You will have

13   to report as soon as possible to the pretrial services office

14   any contact with law enforcement personnel; including arrest,

15   questioning, or traffic stops.  You will have to follow the

16   instructions of the pretrial officer.  You will have to

17   surrender your Illinois firearm license to the probation

18   office.  You may not possess, have access to, or use any device

19   capable of accessing the Internet.

20        So for the family, I imagine that you all have

21   devices yourselves that can access the Internet.  Those are

22   going to need to be password protected, and the defendant is

23   not to have those passwords and he is not to use your devices.

24        The defendant shall enroll in, and follow all rules

25   of, and successfully complete a program of inpatient therapy

USA v. Madrigal, 3:22cr19, 3/2/2023

1   for mental health and alcohol abuse as approved by the

2   probation office, and the defendant shall adhere to an

3   after-care plan following inpatient treatment.  The plan shall

4   be informed by the recommendation of his mental health

5   treatment providers and approved by the probation office.

6            Does the probation office recommend anything

7   additional?

8            PROBATION OFFICER:  No, Your Honor.

9            THE COURT:  Does the government have anything to say

10  about the conditions themselves?

11           MS. JOYCE:  Not about the conditions, Your Honor.

12  But the government would request notice prior to any kind of

13  release so that it's aware of the timeline regarding that and

14  so it has a chance to notify the victims.

15           THE COURT:  All right.  I think that the notice from

16  the probation office approving any plan would of course have to

17  go to the Court, but I would also want that to go to the United

18  States attorney's office.  And then when the marshals are --

19  once all these conditions are satisfied, when the marshals are

20  notified that it's acceptable to release the defendant, that

21  notice should also go to the U.S. attorney's office as well.

22           Ms. Joyce, is that sufficient?

23           MS. JOYCE:  Yes, Your Honor.

24           THE COURT:  Does the defendant have anything to say

25  about the conditions?

USA v. Madrigal, 3:22cr19, 3/2/2023

1    MR. MAHER:  No, Your Honor.  Thank you very kindly.

2    THE COURT:  Mr. Madrigal, if you were to violate

3  these conditions, an arrest warrant could be issued for you and

4  you could be taken into custody and held for the rest of your

5  case.  You could also be found in contempt of court of this

6  order for violating the conditions, and the $20,000 unsecured

7  bond could be revoked and you could be required to pay that

8  amount to the government.

9    Now, additionally, while on release if you were to

10  commit a federal felony offense or if you were to obstruct a

11  criminal investigation or tamper with a victim, witness, or

12  informant, or attempt to do so, or if you fail to appear as

13  required, or fail to surrender to serve any sentence, you could

14  be charged with another federal offense that's punishable by up

15  to ten years in prison and a $250,000 fine or both.  So

16  Mr. Madrigal, there are serious consequences if you violate the

17  conditions.  They're even more serious consequences if you were

18  to commit an offense while on release.

19    Now, if you agree to abide by these conditions, then

20  you'll need to sign the conditions as well as the bond.

21    THE DEFENDANT:  Yes, Your Honor, I understand.

22    THE COURT:  As I said earlier, I think there's a real

23  difference between -- at least the evidence has shown there is

24  a real difference between Mr. Madrigal when he's stable and

25  when he's not stable.  I think that these conditions

USA v. Madrigal, 3:22cr19, 3/2/2023

1  program does not seem to be any different in that way.  And the

2  defendant has -- and defense counsel have not actually proposed

3  an actual plan.  There are no specifics.  They have just noted

4  that the facility exists and the defendant might be qualified

5  for it.

6        And finally, even while detained --

7        THE COURT:  Ms. Joyce, some of the statements that

8  the defendant has made talking about violence, killing,

9  violating court orders and things, are there some particular

10  actions that he has taken beyond these statements that we

11  talked about a lot that are of real concern for the government

12  that you would point me to?

13        MS. JOYCE:  So I think that the defendant's

14  contacting Victim 2 after she filed a temporary protection

15  order against him in January of 2020 is an action he took that

16  exhibits that he does not respect that court authority.

17  Additionally, as the Court is aware, the actions that are

18  alleged in the complaint include very, very concerning

19  aggressive and violent conduct toward the victims.  He has

20  brandished firearms in their presence.  He has wielded weapons

21  in their presence.  He has threatened their lives.  He has

22  threatened their family's lives.  He has ground up an entire

23  bottle of medicine in one of the victim's pet's food dish.  He

24  has destroyed their property.  He has, again, stabbed a knife

25  through an image associated with one of the victim's nicknames.

Madrigal offers the following examples of the Government's allegations which either do not paint the entire picture or are contradicted by evidence the Government has in its possession, custody, and/or control, however, nowhere in the Government's papers on file to date is mention of the evidence bearing on the complete truth. The following numbered paragraphs set forth Governmental allegations followed by Madrigal's placing the allegation at issue.

\* \* \* \* \*

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT (DOC 3-1)

**GOV'T ALLEGATION 1**: "Madrigal claimed Victim 1 was his fiancée. This was untrue." (Doc. 17 at 5).

**DFENSE RESPONSE 1:** On March 1, 2023, Madrigal's counsel viewed numbers images in the United States Attorney's Office ("USAO") depicting both Madrigal and Victim 1 wearing what can be seen as engagement rings and/or wedding rings; *e.g.*, USAO Image 003.

**GOV'T ALLEGATION 2**: "In early 2022 . . . the Army learned Madrigal omitted a DUI arrest on his application." *Id.* at 4.

**DEFENSE RESPONSE 2:** Upon a Lawrence, Kansas 2019 arrest for which no conviction was forthcoming, authorities released Madrigal to his US Army National Guard Company Commander.

**GOV'T ALLEGATION 3**: "Evidence also shows Madrigal lied to the Army … claim[ing] no contact with a foreign national." *Id.*

**DEFENSE RESPONSE 3:** To date, the Government has disclosed no evidence that Madrigal had any contact with an actual foreign national, that Madrigal was issued any warning or advisement about 18 U.S.C. § 1001 (the TJAGCLS G-2 Out-processing Document (USAO



1

000006 contains neither the customary executive branch advisement nor warning), nor does Count II of the Indictment contain the customary advisement/warning language … that it is a crime to "knowingly make any materially false, fictitious, or fraudulent statement or representation … per 18 U.S.C. § 1001."

**GOV'T ALLEGATION 4:** "[Madrigal] held a pistol to [Victim 2's] head, as shown [in a blurry image taken at Victim 2's residence].

**DEFENSE RESPONSE 4:** No firearm can be seen in the image the Government relied upon to support this allegation. Instead, Madrigal is actually holding up a cell phone to record Victim 2's outbursts while under the influence of alcohol.

**GOV'T ALLEGATION 5:** The Government claims Madrigal engaged in unwanted contact with Victim 1 beyond January 2022.

**DEFENSE RESPONSE 5:** On February 12, 2022, the following image was taken on Madrigal's phone, which is in the Government's possession:



## INDICTMENT (DOC. 45)

**ALLEGATION 1:** In paragraph 2, the Government alleges that Madrigal "was discharged from active duty in 2016."

**DEFENSE RESPONSE 1:** Madrigal was honorably discharged from active duty three times: 2012, 2016, and 2022. Madrigal also received an Honorable Discharge from the Kansas National Guard in 2020. These records are in the Government's custody, possession, and control.

**ALLEGATION 2:** In paragraph 4, the Government describes The Judge Advocate General's Legal Center and School "a federal service academy."

**DEFENSE RESPONSE 2:** The United States of America runs 19 Federal service academies, none of which include The Judge Advocate General's Legal Center and School.

**ALLEGATION 3:** In paragraph 5, the Government alleges that, "[b]etween August and December 2020 . . . during this timeframe, the Army determined Madrigal failed to report an arrest for . . . DUI."

**DEFENSE RESPONSE 3:** Lawrence, Kansas authorities arrested Madrigal in June 2019 for DUI and released Madrigal to his Kansas National Guard Company Commander, First Lieutenant Blake Stokes (the information is contained on Madrigal's hard-drive which the Government confiscated).

**ALLEGATION 4:** In paragraph 6, the Government alleges relating to the unclassified paralegal power points slide decks, "Madrigal was granted instructor-level access rights . . . which allowed him to update . . . as directed by his supervisor.

**DEFENSE RESPONSE 4:** Madrigal was an administrator with access rights in addition to instructor access rights, and, the Army authorized Madrigal to make edits and modifications, *sua sponte*, and in response to his supervisor.

**ALLEGATION 5:** In paragraph 7, the Government alleges relating to the unclassified paralegal power point slide decks, Madrigal's action "rendered the [slide deck] inaccessible … and required the Army to rebuild portions of the course."

**DEFENSE RESPONSE 5:** The slides were saved on a Shared Drive to which others, to include Madrigal's supervisor continuously had access, and edits to the slide deck were saved in paper copy.

**ALLEGATION 6:** In paragraph 9, the Government alleges Victim 1 "asked Madrigal not to message her" on or about February 6 or 7, 2022.

**DEFENSE RESPONSE 6:** On or about February 12, 2022, Victim 1 had traveled from her residence in Oklahoma to Madrigal's residence in Charlottesville and stayed with Madrigal. On March 5, 2022, and pursuant to the *All Trails* app in the Government's possession, Victim 1 and Madrigal hiked together, after Madrigal traveled from Virginia to Oklahoma, at Woodall Mountain, Mississippi.

**ALLEGATION 7:** In paragraph 10, the Government alleges that "no other calls were received from or placed to the Russian Embassy on this date."

**DEFENSE RESPONSE 7:** Madrigal's phone records show that his first call on February 7, 2022, was to the Russia House restaurant.

**ALLEGATION 8:** In paragraph 11, the Government alleges that the Army notified Madrigal on February 7, 2022, of the Army's intent to administratively separate Madrigal.

**DEFENSE RESPONSE 8:** On February 4, 2022, the Army informally notified Madrigal of separation action, on February 11, 2022, the Army notified Madrigal formally of separation action, and on February 24, 2022, the Army provided Madrigal with Notice of Honorable Discharge.

**ALLEGATION 9:** In paragraph 12, the Government alleges that the Army asked Madrigal whether he "had any contact with a foreign national while assigned to the TJAGLCS?"

**DEFENSE RESPONSE 9:** Nowhere in the Government's papers filed to date is any identification of any actual foreign national with whom Madrigal is purported to have had contact.

**ALLEGATION 10:** The Government claimed that after December 2021, Victim I was "terrified" of Madrigal. (Hrg. Tr. p. 10, ln. 5 dated September 28, 2022).

**DEFENSE RESPONSE 10:** On March 8, 2022, after Victim 1's February 2022 trip to see Madrigal in Virginia, and Madrigal's March 2022, trip to visit Victim 1 in Oklahoma, Madrigal transferred $1000 to Victim 1 using the *Zelle* app (seized by the Government in Madrigal's electronic devices).

**ALLEGATION 11:** In paragraph 30 of the Indictment that Madrigal traveled from Virginia to Victim 1's home in "late December 2021, "over her objection."

**DEFENSE RESPONSE 11:** In a voicemail dated January 1, 2022, in the Government's possession, after the December 2021 visit Madrigal paid to Victim 1 described in the Indictment, Victim 1 states words to the effect of "begging" Madrigal to come back and telling Madrigal that Victim 1 "loves" Madrigal.

Also in the Government's possession are Madrigal's bank statements and Zelle (money transferring app). On December 20, 2021, Madrigal transferred $282.00 to Victim 1 in anticipation of the trip to visit Victim 1 so that Victim 1 could buy dog food and pet supplies.

**ALLEGATION 12:** In paragraph 34, the Government alleges that Madrigal sent Victim 1 an image of a "painted assault rifle."

**DEFENSE RESPONSE 12:** Victim 1 is a commissioned officer on active duty in the United States Army. Over the course of Victim 1 and Madrigal's adult, consensual romantic

relationship, the couple exchanged images of pistols and rifles on numerous occasions, as depicted in the images in the Government's possession seized and residing on Madrigal's electronic devices.

IN THE UNITED STATES DISTRICT COURTFOR THE
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:22-CR-00019-NKM-JHC |
| | ) | |
| | ) | |
| MANFREDO M. MADRIGAL, III, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DAVID M. MADRIGAL

1. My name is David M. Madrigal, I am a citizen of the United States over the age of 18 years, reside in the state of Illinois, and I am a practicing attorney in the state of Illinois with Illinois Attorney Registration and Disciplinary Commission Number 6342474.

2. The defendant in this case is my blood brother whom I love, respect, and for whose service in combat to protect and defend our nation I am grateful.

3. I am writing this declaration in addition to my previous declaration dated February 23, 2023.

4. I attended my brother's detention hearing on March 2, 2023. I understand all the release conditions given by the Magistrate Judge. I pledge to follow all release conditions given by the Magistrate Judge. I also pledge that if my brother violates any release conditions, I will report the violation however the Court deems necessary.

5. I would like to address a gross mischaracterization presented in the Government's memorandum in support of its motion to revoke the Magistrate's order granting release. The Government states that upon direction of my brother, I created a Strava account "to locate information about Victim 1". The Government states that this is "alarming" due to me being an attorney and being "susceptible to the defendant's inappropriate requests even when made from jail." Government goes on to state that "it shows David is willing to use social media to locate (and potentially contact) a victim in this case." The Government states they pulled my search history and saw that I did previously search Victim 1's name. Lastly, the Government attempts to indicate my account was created "for the sole purpose of tracking Victim 1". The Government is referencing a phone call on October 9, 2022, where I spoke to my brother. However, my Strava account was created on October 4, 2022. This being 6 days prior to my conversation with my brother



on October 9, 2022. The truth behind me making that account was due to an advertisement indicating that if you downloaded Strava, completed 180 minutes of activity on the app, you could win 2 tickets to New York, a $600 travel stiped, and meet Andrew Huberman. I have provided documentation for both the date my Strava account was created and for the advertisement that was posted on October 4, 2022. Andrew Huberman is a podcaster that I listen to who provides science back ways to improve your health and life.

6.   There is no evidence to support that I am "willing to use social media to locate (and potentially contact) a victim in this case". I will also pledge once again that I will not, and have not, used social media to contact, locate the present location of an alleged victim, or track in alleged victim in this case. The Government has made it clear that they have obtained my search history from Strava. Which means, they know all the searches I made for Victim 1s account was made within a very narrow timeline. I did not, I have not, and I will not use any form of technology or any other resource to attempt to track any alleged victims in this case. I made it clear to the FBI when I spoke to them on March 13, 2023, 2 days before their memorandum was submitted, that I did not search for Victims 1 name to track her in any form. I informed the FBI that I was already attempting to find evidence showing that Victim 1 made false statements to the FBI. Therefore, I am not "susceptible to the defendant's inappropriate requests".

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct.

Executed on this 16th day of March, 2023 in Barrington, Illinois, United States of America.

Signed: _____

David M. Madrigal

STATE _____ COUNTY _____
SIGNED BEFORE ME ___ DAY _____
NOTARY PUBLIC _____

Respectfully submitted,

**/s/Jessica F. Phillips**
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, Virginia 22902
Tel: (434) 260-8767
Fax: (434) 710-4061
E-mail: jphillips@rc.law

OFFICIAL SEAL
THOMAS SCHAEFER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 07/20/24

**/s/ John N. Maher**
John N. Maher (IL Bar #6237599)
Kevin J. Mikolashek
MAHER LEGAL SERVICES, PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 781-9212
Fax: (708) 781-9693
john@maherlegalservices.com
kevin@maherlegalservices.com

## CERTIFICATE OF SERVICE

I hereby certified that on this 17 day of March 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Jessica F. Phillips
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, Virginia 22902
Tel: (434) 260-8767
Fax: (434) 710-4061
E-mail: jphillips@rc.law

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:22-CR-00019-NKM-JHC |
| | ) | |
| | ) | |
| MANFREDO M. MADRIGAL, III, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF MANFREDO M. MADRIGAL, JR. AND ROXANNE MADRIGAL**

1.  My name is Manfredo M. Madrigal, Jr. I am a citizen of the United States over the age of 18 years, reside in the state of Illinois, married to Roxanne Madrigal for 38 years, and the defendant in this case is our beloved son.

2.  We are a tightknit family who loves Manny, respects him for his hard work and dedication, and for whose service in combat to protect and defend our nation we are grateful.

3.  We are writing this declaration in addition to our previous declaration dated February 27, 2023.

4.  We have been informed of all the release conditions given by the Magistrate Judge. We pledge to follow all release conditions given by the Magistrate Judge. I also pledge that if our son violates any release conditions, we will report the violation.

5.  We would like to address the Government stating in their memorandum in support of its motion to revoke the Magistrate's order granting release, that Jim Shaw indicated we would have directly contacted Victim 2 absent him. We would like to clarify that Jim Shaw was our son's former state defense attorney. Jim Shaw was fired due to not responding to emails/phones calls, making blatant lies, neglect, and other reasons. Once we knew of the reasoning behind our son's arrest, we did not and have not reached out to Victim 2. We pledge once again, that we will not attempt to contact any alleged victim.

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct.



Executed on this 16th day of March, 2023 in Barrington, Illinois, United States of America.

Signed: _____

Manfredo M. Madrigal

STATE __IL__ COUNTY __Cook__

SIGNED BEFORE ME __16__ DAY __Mar__ 20__

NOTARY PUBLIC __Thomas Schaefer__

OFFICIAL SEAL
THOMAS SCHAEFER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES

Respectfully submitted,

**/s/Jessica F. Phillips**
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, Virginia 22902
Tel: (434) 260-8767
Fax: (434) 710-4061
E-mail: jphillips@rc.law

**/s/ John N. Maher**
John N. Maher (IL Bar #6237599)
Kevin J. Mikolashek
MAHER LEGAL SERVICES, PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 781-9212
Fax: (708) 781-9693
john@maherlegalservices.com
kevin@maherlegalservices.com

## CERTIFICATE OF SERVICE

I hereby certified that on this 17th day of March, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Jessica F. Phillips
Jessica F. Phillips (VSB #65953)
Royer Caramanis PLC
200-C Garrett Street
Charlottesville, Virginia 22902
Tel: (434) 260-8767
Fax: (434) 710-4061
E-mail: jphillips@rc.law



EXHIBIT

12