# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:22-cr-00019 |
| v. | MEMORANDUM OPINION & ORDER |
| MANFREDO MARTIN-MICHAEL MADRIGAL, III, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

The Court issued a Memorandum Opinion & Order finding by clear and convincing evidence that Defendant Manfredo Madrigal poses a threat to numerous persons, the community, and national security and that no condition or combination of conditions could reasonably assure their safety if released. The Court held Madrigal detained pending trial. Madrigal has now filed a motion for reconsideration of that decision. The Court will deny Madrigal's motion because he forfeited the issues he now raises in the motion for reconsideration, and even if he had not, his arguments fail on the merits and Madrigal cannot show he suffered prejudice stemming from any perceived error.

Madrigal is charged in an eight-count indictment with cyberstalking, witness tampering, attempted witness tampering after his arrest, making false statements to numerous government agencies (incl. the Army, Federal Bureau of Investigation, and OPM), and destruction of government property. Madrigal is a former Army Ranger with sniper training who served several combat tours in Afghanistan and later graduated from law school, enrolling in the Judge Advocate General (JAG) Legal Center and School. Madrigal made numerous death threats to his

former romantic partners Victim 1 and Victim 2 and their families consistently and over a period

of years, as the Court found at his detention hearing, including

- "**I will kill mother fuckers.** And they will eventually kill me."

- "**If you are going to send anyone send one of the guys [Victim 2] has been talking to. So I can get one or two good kills before I get blasted** … I just need somebody to come throught [sic] that door."

- "**I will kill your half ass faggot brother if he tries to talk to me again bitch**."

- "**I am going to find you, and I am going to fucking kill you for what you did to me. Just so you know** …."

- When Victim 2 sought a protective order against Madrigal, he told her it "would do jack shit," and "**if I wanted to kill you, I would figure out when you're going to be home and I would come and kill you, if that's what I wanted to do**."

- He told Victim 1 her father "did this," and "**I'm coming after him and then you**."[1]

The Court found that Madrigal also engaged in a wide array of other threatening conduct,

including: stabbing a knife into a food container with an image of a bear on it and leaving it on

Victim's 1's counter for her to see (Victim 1's nickname, which Madrigal used, was "Bear");

trying to poison Victim 1's cat by grinding up a bottle of medication and placing it inside the

cat's dish; texting Victim 1 a series of passcodes and numbers Victim 1 used for her accounts,

apartment complex, and license plate, stating "I remember all things," and "I like numbers"; and,

after an argument, pulling out a pistol and placing it to his head, and threatening to commit

suicide while Victim 1 was in the same room, leading Victim 1 to fear he would kill her in a

---

[1] Madrigal made the first five threats to Victim 2, the last to Victim 1. *See* Dkt. 107 (Mem. Op. & Order) at 8–10 (¶¶ 32, 37–40).

"murder-suicide."[2] In August 2022, law enforcement arrested Madrigal after Victim 2 called law enforcement to report that Madrigal had held a pistol to her head, which incident was captured on a security camera.[3]

Other charges stem from Madrigal's surreptitious deletion of government property (a National Security Law Primer course at the JAG School) and then lying to the FBI about it;[4] calling the Russian Embassy following threats that he was going to divulge sensitive information to Russia, a hostile foreign power (e.g., Madrigal writing that, "Ya, Russia has reached out to me … Your people want to betray me … It is done … You people have fucked with me too many times … Guess what I can do next," and that "[t]he Russians in DC reached out to me, they would like to know what I know"); and then lying to the Army and the FBI about his contact with the Russian Embassy.[5] And Madrigal is charged with witness tampering—after he coached Victim 2 to lie to the FBI about his contact with the Russian Embassy—as well as attempted witness tampering even after his arrest, when he tried to get his family to "enlighten[ ]" Victim 1 to discourage her from testifying against him.[6]

The Government moved to detain Madrigal pending his trial, and following a hearing, argument, and upon consideration of the record evidence, the Court found that "the Government has demonstrated by clear and convincing evidence that: Madrigal poses a danger to the safety of several persons, especially Victim 1 and Victim 2, as well as the community more broadly and

---

[2] Dkt. 107 at 6–7 (¶¶ 28, 30).

[3] Dkt. 107 at 10–11 (¶¶ 41–43).

[4] Dkt. 107 at 3–4, 6 (¶¶ 10–15, 26),

[5] Dkt. 107 at 4–6 (¶¶ 15–25).

[6] Dkt. 107 at 12–13 (¶¶ 48–50).

3

indeed to national security; and further, that no condition or combination of conditions would reasonably assure their safety if he were to be released." Dkt. 107 at 1. Accordingly, the Court ordered Madrigal detained pending trial. *Id.*

Defendant has now filed a motion to reconsider the detention order pending trial. Dkt. 117. In his motion, Defendant argues that the Court should not have allowed Victim 1 and Victim 2 to make statements at the detention hearing without putting them under oath and subjecting them to cross-examination. Dkt. 117 at 1–3. However, Defendant neither asked that they be put under oath, nor sought to cross-examine Victim 1 after her in-person statement or Victim 2. It misconstrues the record for Defendant to contend that "the Court … rejected Madrigal's counsel's request to cross-examine the witness," Dkt. 117 at 1, when there never was any "request" to reject. *See* Dkt. 105 at 21–22 (Hr'g Tr.). By not seeking to cross examine Victim 1 or Victim 2 nor making a contemporaneous objection regarding the same,[7] Defendant forfeited the issue and any right to cross examine Victim 1 or Victim 2 at the detention hearing. *See United States v. Carthorne*, 878 F.3d 458, 464 (4th Cir. 2017) ("A litigant failing to object to an error generally forfeits his claim to relief on account of that error."); *United States v. Myers*, 402 F. App'x 844, 845 (4th Cir. 2010) (per curiam) (unpublished) (rejecting similar argument because, while defendant "generally objected to the admissibility of the statement," "he did not ask that he witness be sworn prior to making the statement," "[n]or did he ask for the opportunity to cross-examine her").

---

[7] While Defendant did object to introduction of Victim 2's written statement on the grounds of relevance, which the Court denied, Dkt. 105 at 21–22, at no time did Defendant ask to cross-examine Victim 1 on her in-person statement or Victim 2 on her written statement that was read by the Government's counsel, nor ask that they be put under oath in order to make such statements. *See id.*

4

Defendant's argument that he was entitled to cross examine Victim 1 also fails on the merits because it misperceives the nature of her presence at the detention hearing. To be sure, the Bail Reform Act states that the defendant "shall be afforded an opportunity to testify, to present witnesses, *to cross-examine witnesses* who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f)(2)(B) (emphasis added). Defendant was afforded these rights. However, even if he *had* requested to cross examine Victim 1 (or Victim 2) at the detention hearing—and he did not—he had no right to cross examine them because they were not "witnesses" at the detention hearing. The Government identified this distinction in opening argument. It explained that Victim 1 was present and would make a statement and the Government's counsel would read a written statement by Victim 2, and such statements were offered "pursuant to 18 U.S.C. § 3771," *i.e.*, the Crime Victim Rights Act ("CVRA"), because a crime victim "has a right to be heard at any public proceeding involving release." Dkt. 105 at 3.

The CVRA provided Victim 1 and Victim 2 "[*t*]*he right to be reasonably heard at any public proceeding in the district court involving release*, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4) (emphasis added). A pretrial detention or bail hearing is a "public proceeding in the district court involving release," and so the CVRA provides victims that right to be "reasonably heard" at such hearing. *United States v. Dearing*, No. 1:21-mj-7, 2021 WL 672987, at *3 (E.D. Ca. Feb. 22, 2021). Indeed, the CVRA further states that "the court *shall* ensure that the crime victim is afforded the rights described in subsection (a)," including the right to be reasonably heard at any hearing involving release. *Id.* § 3771(b) (emphasis added). The Court construes Victim 1's and Victim 2's  statements as just that—statements—not testimony that must be given under oath, subject to cross. *See Dearing*, 2021 WL 672987, at *3

(rejecting argument that victim statement must be given under oath and subject to cross); *United States v. Grigg*, 434 F. App'x 530, 533 (6th Cir. 2011) ("[e]very court that has examined this issue has held that there is no requirement to swear in CVRA victims").

Further still, it is significant that these statements were not given at trial or going to the guilt or innocence of the defendant but were made during a pretrial detention hearing. All agree that in a pretrial detention hearing the Government can make out its case that the defendant should be detained by proffer—*none of which* would be subject to cross. *See* Dkt. 117 at 10; *see also United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (holding that "[e]very circuit to have considered the matter … [has] permitted the Government to proceed by way of proffer"). And Defendant cites no authority that a CVRA victim's statement must be under oath and subject to cross in this context.

Finally, even if Defendant had contemporaneously objected and sought to cross examine Victim 1 and Victim 2 (he did not), and even if Defendant had a right to cross examine them as victims under the CVRA (he did not), any perceived error did not prejudice Defendant. The Court did not base its ruling that Defendant be detained pending trial in any aspect on Victim 1 or Victim 2's statements at the detention hearing. Every finding of fact by the Court in relation to Victim 1 and Victim 2, as well as Defendant's unlawful conduct more broadly, was based on the cited record evidence, not the victims' statements. *See* Dkt. 107 at 6–8 (¶¶ 27–34) (findings of fact relating to Defendant's threats to Victim 1); *id.* at 8–11 (¶¶ 35–43) (threats to Victim 2); *see also id.* at 11–14 (¶¶ 44–51) (efforts to influence, intimidate, coach, track or follow witnesses and victims); *id.* at 3–6 (¶¶ 7–26) (discharge from the Army, deletion of Army training materials, communication to Russian Embassy, and making false statements to the Army and FBI). Nor did

the Court's consideration of the relevant § 18 U.S.C. § 3142 factors governing pretrial release involve the victims' statements. *See, e.g.*, *id.* at 20–22 (considering nature and seriousness of the danger Defendant posed to Victim 1 and Victim 2, if he were released); *id.* at 24–27 (considering nature and circumstances of the offenses charged, including cyberstalking Victim 1). Therefore, notwithstanding any potential relevance their statements might have had, the Court based its ruling solely on the cited record evidence and not the victims' witness statements. Defendant cannot complain of any perceived error in the introduction of their statements because Defendant suffered no prejudice thereby.

Defendant's further arguments have no merit and offer no reason to revisit the Court's prior ruling detaining Defendant pending trial. *See* Dkt. 117 at 2, 10–11. In Defendant's view, the Court's May 8, 2023 Order granting the Government's *ex parte*, *in camera* motion for a protective order pursuant to the Classified Information Procedures Act ("CIPA") "increases [the case's] complexity and heightens the need for counsel to have access to their client that is not available while he is confined," and further "portends that the time it will take" before trial "is likely to be lengthened." Dkt. 117 at 2. That ruling was over three months ago, and four months remain until trial, which is set for December 11–15, 2023—a date agreed upon by the parties and scheduled when the Court granted the parties' joint motion to continue the trial until that date. Dkts. 111, 112. Nothing in Defendant's motion for reconsideration, the record in the case, or the May 8, 2023 order substantiates Defendant's argument that this case has become more complex or that the trial will need to be further continued beyond December.

Of course, the Court has taken into account that Defendant is presumed innocent, as he argues. Dkt. 117 at 2. But that presumption is outweighed in the context of pretrial detention,

where, as here, the Court **FINDS** (as it previously found) by **clear and convincing evidence** that Defendant poses a danger to several persons, namely Victim 1 and Victim 2, the community more broadly and national security, and that no condition or combination of conditions would reasonably assure their safety if he were to be released. Accordingly, the Court continues to **FIND** that Defendant must be detained pending trial. *See* Dkt. 107 at 1, 32–33.

The Court further **ADOPTS and INCORPORATES** the Court's Memorandum Opinion & Order of April 7, 2023, herein, in full. Dkt. 107.

Defendant's motion for reconsideration is **DENIED**. Dkt. 117.

Defendant's motion to schedule briefing on the motion for reconsideration is **DENIED as moot**, in view of this Court's ruling denying Defendant's motion for reconsideration. Dkt. 119.

It is so **ORDERED**.

The Clerk of the Court is hereby directed to send this Order to all counsel of record, and to the U.S. Marshal's Service.

Entered this 15th day of August, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE